United States District Court
District of Connecticut
FILED AT    NEW HAVEN

12/16/2010
Roberta D. Tabora, Clerk
By_____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GRAND JURY N-09-2

| | |
|---|---|
| UNITED STATES OF AMERICA : | Case No: 3:10CR120 (CFD) |
| : | |
| : | VIOLATIONS: |
| : | |
| v. : | 18 U.S.C. Section 844(n) |
| : | (Conspiracy to Destroy Property |
| : | Used in Interstate Commerce by Fire) |
| : | |
| ANGELO REYES : | 18 U.S.C. Section 844(i) |
| a/k/a "Tati" : | (Destruction of Property Used |
| OSVALDO SEGUI : | In Interstate Commerce by Fire) |
| a/k/a "Baldo," a/k/a "Bardo" : | |
| OSVALDO SEGUI : | 18 U.S.C. Section 2 |
| a/k/a "Baldito," a/k/a "Dito" : | (Aiding and Abetting) |

## SUPERSEDING INDICTMENT

The Grand Jury charges:

### COUNT ONE

#### General Allegations

1. At all times material to this Indictment, the defendant Angelo Reyes, a/k/a "Tati," (hereinafter "REYES") was a resident of the Fair Haven section of New Haven, Connecticut. REYES owned and operated several commercial and residential properties in Fair Haven, and also sought to develop several other properties in Fair Haven as well.

2. At all times material to this Indictment, the defendant OSVALDO SEGUI, a/k/a "Baldo," a/k/a "Bardo," (hereinafter "SEGUI") was a resident of the Fair Haven section of New Haven, Connecticut.

3. At all times material to this Indictment, the defendant OSVALDO SEGUI, JR., a/k/a "Baldito," a/k/a "Dito" (hereinafter "SEGUI JR.") was a resident of the Fair Haven section of New Haven, Connecticut. SEGUI is the father of SEGUI JR. and the two resided together in an apartment on Maltby Street in New Haven within walking distance of the People's Laundromat.

4. At all times material to this Indictment, REYES owned the building on Maltby Street in which SEGUI and SEGUI, JR. lived. SEGUI and SEGUI JR. resided in the apartment without paying rent to REYES.

5. At all times material to this Indictment, the People's Laundromat was a commercial laundromat, used in interstate commerce, and in any activity affecting interstate commerce, located at 83 Lombard Street in the Fair Haven section of New Haven, Connecticut (hereinafter "the People's Laundromat"). The property located at 83 Lombard Street was a two-story mixed occupancy building with the People's Laundromat on the first floor and two residential apartments on the second floor. REYES owned the property located at 83 Lombard Street, operated the People's Laundromat, and served as the landlord for the residential apartments above the laundromat.

6. On the evening of July 30, 2009, there was a fire at the People's Laundromat. As fire fighters battled the fire, they noticed that the rear door to the laundromat, which can only be accessed and opened from inside the laundromat, was propped open.

7. After the fire had been extinguished, responding personnel located three gasoline cans inside the People's Laundromat. One of these gas cans was located on the top of a clothes dryer and was still intact; one was located on the floor near the rear door and had melted to half its size; and one was located toward the front doors of the laundromat.

8. Upon further investigation, a canine trained to detect accelerants alerted to the presence of accelerants inside the People's Laundromat.

9. Chemical analysis performed at the State of Connecticut Forensic Lab on samples taken from the laundromat tested positive for accelerants. Specifically, testing of samples taken from the People's Laundromat revealed the presence of "a petroleum product consistent with a gasoline."

10. Fire department investigators ultimately determined that the fire was an arson, initiated by accelerants located toward the rear of the business.

11. On or about July 30, 2009, shortly after the fire at the People's Laundromat occurred, SEGUI JR. went to the Yale New Haven Hospital Emergency Room to be treated for burns to his legs. SEGUI JR. was subsequently admitted to the hospital for further treatment for the burns to his legs. SEGUI JR. was discharged from the hospital on July 31, 2009.

12. Following the fire on July 30, 2009, SEGUI JR., in an effort to conceal his participation in the arson of the People's Laundromat, falsely claimed that he sustained his burn injuries while performing work on a car that had caught fire.

13. On or about August 5, 2009, to avoid law enforcement authorities, SEGUI JR. left Connecticut and temporarily relocated to Florida. SEGUI JR. flew from White Plains, New York to Florida using a ticket that he had persuaded a third party to purchase online on his behalf, for which he paid the third party in cash. Prior to leaving, SEGUI JR. stated that he had set the laundromat on fire and needed to go away until things cooled down with the investigation. SEGUI drove SEGUI JR. to the airport.

14. REYES financed SEGUI JR's trip to Florida, and supported SEGUI JR. financially while SEGUI JR. stayed in Florida.

15. Sometime after the People's Laundromat fire, while being questioned about what had happened to SEGUI JR.'s leg, SEGUI stated that SEGUI JR. "got paid" for it.

16. On or about October 20, 2009, law enforcement officers obtained a federal court order to photograph SEGUI JR.'s leg for evidence of burns. On or about October 28, 2009, SEGUI JR. refused to comply with that order.

17. On or about December 7, 2009, law enforcement officers photographed a burn injury that remained on SEGUI JR.'s left leg, located on his lower leg from below the knee to his ankle.

18. As a result of responding to the fire at 83 Lombard Street on July 30, 2009, a New Haven firefighter sustained injuries that rendered him temporarily disabled and unable to return to work without limitations until November 2009.

19. The fire that took place at 83 Lombard Street on July 30, 2009 created a serious risk of injury to an employee and others who were in the People's Laundromat immediately prior to the start of the fire.

### The Conspiracy

20. From in or about mid July 2009 through and including June 2010, in the District of Connecticut and elsewhere, the defendants ANGELO REYES, a/k/a "Tati," OSVALDO SEGUI, a/k/a "Baldo," a/k/a "Bardo," and OSVALDO SEGUI, JR., a/k/a "Baldito," a/k/a "Dito," unlawfully, willfully and knowingly did combine, conspire, confederate and agree together and with each other to commit an offense against the United States, namely to maliciously damage and destroy, by means of fire or an explosive, any building, and other real and personal property used in interstate commerce, and in any activity affecting interstate commerce, namely the People's Laundromat located at 83 Lombard Street, New Haven, Connecticut, in violation of Title 18, United States Code, Section 844(i), during which personal injury resulted to a person, namely, a public safety officer performing his duties, as a direct and proximate result of the conduct, as prohibited by Section 844(i) of Title 18, United States Code.

### Manner and Means of the Conspiracy

21. It was part of the conspiracy that REYES, SEGUI and SEGUI JR. devised a plan to set fire to the People's Laundromat.

22. It was part of the conspiracy that SEGUI JR. would set fire to the People's Laundromat, while SEGUI would perform the role of a lookout.

23. It was part of the conspiracy that SEGUI and SEGUI JR. would be paid or receive other benefits from REYES for their participation in the arson of the People's Laundromat.

### Overt Acts

24. In furtherance of the conspiracy and to effect the objects thereof, within the District of Connecticut and elsewhere, REYES, SEGUI and SEGUI JR. did commit and cause to be committed the following overt acts, among others:

a. Prior to the fire on July 30, 2009, REYES told SEGUI that he was having financial problems with the People's Laundromat at 83 Lombard Street and that the property "had to go," otherwise REYES could lose everything, including the house in which SEGUI was living.

4

b. Prior to the fire on July 30, 2009, REYES, in SEGUI's presence, cut holes in the ceiling of the People's Laundromat, to provide access to the area above a drop ceiling.

c. Prior to the fire on July 30, 2009, REYES manually turned off the recording function of the People's Laundromat video surveillance system on several occasions.

d. Prior to the fire on July 30, 2009, SEGUI offered participation in the People's Laundromat arson to another individual, who declined to participate.

e. Prior to the fire on July 30, 2009, REYES asked SEGUI JR. to help burn the People's Laundromat. REYES instructed SEGUI JR. to obtain used gas cans for the task; to purchase gas from a specific gas station that did not have surveillance cameras; to dress to avoid detection; and to follow a certain path between an alley between the SEGUI's residence on Maltby Street and the People's Laundromat at 83 Lombard Street. REYES told SEGUI JR. that he would put a card in the rear door of the laundromat so that SEGUI JR. could obtain access to the back of the laundromat. REYES told SEGUI JR. that he would find two holes near the ceiling in which he should pour the gasoline; that he should pour a path of gas back to the rear door; that he should then ignite the fire; and that he should follow the same path back to the Maltby Street residence. REYES told SEGUI JR. that SEGUI would show SEGUI JR. the steps he had explained so that SEGUI JR. could set the fire.

f. Prior to the fire on July 30, 2009, SEGUI and SEGUI JR. met so that SEGUI could show SEGUI JR. how to set the fire. SEGUI walked SEGUI JR. along the path between the Maltby Street residence and the People's Laundromat. A card had been placed in the rear door to keep it from locking. In the rear of the laundromat, SEGUI showed SEGUI JR. the two holes that had been cut into the sheetrock to access the area above a drop ceiling. SEGUI told SEGUI JR. to pour one tank of gas in one hole; to pour another tank of gas into the other hole; to make a path of gas back to the door; to ignite the fire; and to follow the same path back to their Maltby Street residence.

g. Prior to the fire on July 30, 2009, SEGUI JR. attempted to obtain used gasoline cans from a convenience store that he frequented in New Haven.

h. Prior to the fire on July 30, 2009, SEGUI drove his vehicle to the People's Laundromat and carried gasoline cans into the laundromat.

i. On July 30, 2009, on several occasions immediately before the fire began, SEGUI repeatedly drove his vehicle around the block where the People's Laundromat was located.

j. On July 30, 2009, SEGUI JR. accessed the People's Laundromat from the back door and poured gasoline into one of the holes cut in the ceiling. The gasoline ignited, which resulted in a fire in the building.

k. As a result of their participation in the arson of the People's Laundromat, SEGUI and SEGUI JR. received money and other benefits from REYES.

l. On or about August 5, 2009, in an effort to conceal his conduct and avoid detection, SEGUI JR. fled Connecticut and temporarily relocated to Florida. Prior to SEGUI JR.'s departure, REYES told SEGUI that things were "too hot" and SEGUI JR. should leave town. REYES gave money to SEGUI to pay for SEGUI JR.'s flight to Florida. While in Florida, SEGUI sent money, provided by REYES, to SEGUI JR.

m. After the fire, in an effort to conceal his conduct and avoid detection, SEGUI JR. falsely claimed that he sustained his burn injuries while performing work on a car that had caught fire.

All in violation of Title 18, United States Code, Section 844(n).

## COUNT TWO

25. The allegations set forth in paragraphs 1 through 19 of this Indictment are hereby re-alleged and incorporated as though set forth in full herein.

26. On or about July 30, 2009, in the District of Connecticut, the defendants ANGELO REYES, a/k/a "Tati," OSVALDO SEGUI, a/k/a "Baldo," a/k/a "Bardo," and OSVALDO SEGUI, JR., a/k/a "Baldito," a/k/a "Dito," maliciously damaged and destroyed, by means of fire or an explosive, any building, and other real and personal property used in interstate commerce, and in any activity affecting interstate commerce, namely the People's Laundromat located at 83 Lombard Street, New Haven, Connecticut, during which personal injury resulted to a person, namely, a public safety officer performing his duties, as a direct and proximate result of the conduct.

In violation of Title 18, United States Code, Sections 844(i) and 2.

A TRUE BILL

_____
GRAND JURY FOREPERSON

_____
DAVID B. FEIN
UNITED STATES ATTORNEY

_____
RAYMOND F. MILLER
ASSISTANT UNITED STATES ATTORNEY

_____
STEPHEN B. REYNOLDS
ASSISTANT UNITED STATES ATTORNEY